UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GERALDINE RAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:09-CV-275 |
| ) | (SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

All further proceedings in this case, including entry of judgment, have been referred to the undersigned by the Order [Doc. 15] of the Honorable Thomas W. Phillips, United States District Judge, in accordance with 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties. This case is now before the undersigned for disposition of Plaintiff's Motion for Summary Judgment [Doc. 9] and Defendant's Motion for Summary Judgment [Doc. 13]. Plaintiff Geraldine Ray ("Plaintiff"), seeks judicial review of the decision of Administrative Law Judge ("ALJ") William T. Overton denying her benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On March 29, 2006, Plaintiff filed an application for supplemental security income ("SSI"). [Tr. 16]. On the application, Plaintiff alleged a period of disability beginning on March 1, 2006, [Tr. 52], but she later amended her allegation to reflect a disability onset date of March 29, 2006, [Tr. 16, 450]. After her application was denied initially and also denied upon reconsideration, Plaintiff

requested a hearing. On March 24, 2008, a hearing was held before ALJ William T. Overton to review the determination of Plaintiff's claim. [Tr. 447-66]. On August 8, 2008, the ALJ found that Plaintiff was not under a disability from March 29, 2006, through the date of the decision. [Tr. 16-22]. On May 6, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 5-8]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## I.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since March 29, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq*.).

2. The claimant has the following severe impairment: back pain(20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to perform the full range of medium work with a non-severe emotional disorder.

5. The claimant is capable of performing past relevant work as an assembler, electrician's helper, and housekeeper. The vocational expert testified that the job of assembler was unskilled vocationally and required light exertion, the job of electrician's helper was unskilled vocationally and required medium exertion, and the job of housekeeper was unskilled vocationally and required medium exertion. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565 and 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since March 29, 2006, (20 CFR 416.920(f)), the date the application was filed.

[Tr. 18-22]

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Whether a SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his

> past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of

Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    ANALYSIS

Plaintiff raises only two arguments on appeal. First, Plaintiff contends that the ALJ's

6

determination of her physical residual functional capacity ("RFC") was not supported by substantial evidence. [Doc. 10 at 7]. Plaintiff argues that "[t]he ALJ erred in failing to accord proper weight to the opinion, [Tr. 363-64], of Plaintiff's long-time treating physician," Dr. Ryan Guanzon, M.D. [Doc. 10 at 7]. Plaintiff argues that this error caused the ALJ to make a determination of her RFC that was incorrect and unsupported by the record. Plaintiff concludes that this case should be remanded to the Commissioner so that her RFC can be properly determined.

Plaintiff also contends that this case should be remanded "in accordance with the sixth sentence of 42 U.S.C. § 405(g) to consider new evidence which arose since the ALJ denied [her] claim." [Doc. 10 at 10]. Plaintiff argues that new evidence reflecting "diagnoses of severe depression and anxiety" was submitted to the Appeals Council and thus became part of her medical record "less than one month after the ALJ issued a denial in this case." [Doc. 10 at 12]. Plaintiff argues that "had the ALJ ha[d] access to the new evidence, there is a good chance he would have reached a different conclusion" with respect to his findings that Plaintiff "had no severe mental impairments and no mental limitations whatsoever." [Doc. 10 at 12] (citing [Tr. 20]). Plaintiff concludes that the fact that new, material evidence came to light after the ALJ's decision was rendered warrants remanding this case so that her mental limitations can be properly determined.

In response, the Commissioner contends that the ALJ considered the entire record, and that substantial evidence supported his determination of Plaintiff's physical RFC. [Doc. 14 at 2-8, 11-17]. The Commissioner argues that the ALJ properly considered and weighed all of the opinion evidence in the record, including the opinion of Dr. Guanzon, when determining Plaintiff's RFC. [Doc. 14 at 17-19]. The Commissioner specifically argues that the ALJ's decision to discount Dr. Guanzon's opinion was appropriate because "Dr. Guanzon did not appear to have the longstanding

7

treatment relationship with Plaintiff contemplated by the regulations, his assessment was only minimally supported by clinical and laboratory diagnostic techniques, and his assessment was inconsistent with other substantial evidence." [Doc. 14 at 18].

In response to Plaintiff's second contention that remand is warranted pursuant to sentence six of 42 U.S.C. § 405(g), the Commissioner argues simply that "Plaintiff has failed to carry her burden of proving [a] reasonable probability that [the new] evidence [to which she cites] would have changed the ALJ's disability analysis." [Doc. 14 at 21]. The Commissioner contends that the new evidence to which Plaintiff cites does not amount to "substantial evidence" to support a finding that Plaintiff has a severe mental impairment or any work-related mental limitations. The Commissioner asserts that the "diagnoses of severe depression and anxiety," [Doc. 10 at 12], to which Plaintiff cites were based on Plaintiff's incredible representations to the diagnosing mental health examiner. [Doc. 14 at 22]. Further, the Commissioner asserts that the diagnoses only related to Plaintiff's current mental condition at the time they were made, and *not* to Plaintiff's past mental condition during any part of the period from March 29, 2006, through the date of the ALJ's decision. [Doc. 14 at 22]. The Commissioner argues that "the medical evidence Plaintiff submitted to the Appeals Council" does "not satisfy the conditions for sentence six remand." [Doc. 14 at 22-23]. The Commissioner concludes that substantial evidence supported the ALJ's ultimate determination that Plaintiff was able to perform her past relevant work, and therefore was not under a disability and not entitled to SSI benefits.

The Court addresses Plaintiff's two contentions in turn.

### A. The ALJ's consideration of Dr. Guanzon's opinion

When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation, and he has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating

9

source's non-controlling opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, Plaintiff argues that the ALJ failed to accord proper weight to the opinion of Dr. Ryan Guanzon, M.D., that was provided in a "Medical Assessment of Ability to Do Work Related Activities (Physical)" form, [Tr. 363-64], dated January 14, 2008. On the assessment form, Dr. Guanzon noted that Plaintiff only had the ability to lift and carry a maximum of five pounds. [Tr. 363]. Dr. Guanzon also noted that during an 8-hour day Plaintiff could stand and walk for only 2 hours, and could sit for only 1 hour. [Tr. 363]. Dr. Guanzon offered the following medical findings as support for his assessment: "[Plaintiff] has osteopenia coupled with severe low back pain, [history of] coccyx-sacral fracture, L5/S1 disc narrowing, [and] degenerative disc disease." [Tr. 363].

The ALJ considered Dr. Guanzon's assessment form, and discussed it in his narrative decision as follows:

> The claimant's primary care physician, Dr. Guanzon, completed a Medical Assessment of Ability to Do Work-Related Activities (Physical). Dr. Guanzon's assessment limits the claimant to less than sedentary exertion. Dr. Guanzon apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. Dr. Guanzon's assessment contrasts sharply with the other evidence of record and is not supported by the medical evidence of record as a whole.

[Tr. 21].

As an initial matter, it is clear from his reference to Dr. Guanzon as Plaintiff's "primary care

10

physician" that the ALJ considered Dr. Guanzon to be a treating source. Because Dr. Guanzon was a treating source, his opinion was entitled to receive controlling weight in the ALJ's physical RFC determination process if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544. The ALJ chose not give Dr. Guanzon's opinion controlling weight because he found that the opinion was (1) based on Plaintiff's incredible subjective reporting, and *not* on medically acceptable clinical and laboratory diagnostic techniques; and (2) sharply inconsistent with the other substantial evidence in Plaintiff's medical record. These findings were reasonable and supported by substantial evidence, and the Court therefore finds that the ALJ did not commit error by discounting Dr. Guanzon's opinion.

The ALJ justified his rejection of Dr. Guanzon's opinion by explaining that the opinion appeared to be based on "the subjective report of symptoms and limitations provided by" Plaintiff. [Tr. 21]. The Court finds that there is substantial evidence in the record to support this explanation. The ALJ believed Dr. Guanzon's assessment to be based on Plaintiff's subjective self-reporting because the stated evidentiary basis for the opinion–Plaintiff's osteopenia, severe low back pain, history of coccyx-sacral fracture, L5/S1 disc narrowing, and degenerative disc disease–was too thin and was not formed as a result of Dr. Guanzon's own independent observation and testing. The Commissioner correctly points out that "there is no evidence in the record that Plaintiff underwent laboratory diagnostic testing or clinical examinations while under Dr. Guanzon's care." [Doc. 14 at 19]. Thus, Dr. Guanzon did not have any of his own current, objective medical data confirming Plaintiff's osteopenia, severe low back pain, history of coccyx-sacral fracture, L5/S1 disc narrowing, and degenerative disc disease. Dr. Guanzon recited these "medical findings" as support for his

assessment even though they were not *his* findings. And Dr. Guanzon did not explain the "medically acceptable clinical and laboratory diagnostic techniques" that were used by others when making the findings. Because of Dr. Guanzon's minimal effort to support his assessment with an explanation of objective medical findings, the Court finds that it was reasonable for the ALJ to conclude that Dr. Guanzon "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." [Tr. 21]. This conclusion appropriately led the ALJ to discount Dr. Guanzon's opinion. See 20 C.F.R. § 404.1527(d)(3).

The ALJ also provided a second justification for discounting Dr. Guanzon's opinion. The ALJ explained that Dr. Guanzon's opinion "contrasts sharply with the other evidence of record." [Tr. 21]; see 20 C.F.R. § 404.1527(d)(4). The Court finds that the ALJ's explanation was reasonable and supported by substantial evidence. Three examples are sufficient to demonstrate the inconsistency of Dr. Guanzon's opinion that Plaintiff could lift a maximum of five pounds with other evidence in the record. First, Dr. Wayne Page, M.D., examined Plaintiff on May 28, 2004, and noted that "there is no information in the medical literature to support a 5-pound lifting restriction or to support the allegation of back pain with lifting of 5 pounds." [Tr. 215]. Dr. Page also noted that Plaintiff showed "no sign of discomfort" while one of her 11-year-old sons was "hanging off of her in a playful fashion" during the examination. [Tr. 212]. Second, Plaintiff herself stated on September 18, 2006, that she was capable of carrying 20 pounds over a distance of 20 feet. [Tr. 257]. Third and finally, Plaintiff again stated that she was capable of carrying 20 pounds over a distance of 20 feet "without difficulty" on August 10, 2007. [Tr. 265]. The Court finds that the inconsistency between Dr. Guanzon's assessment and the overall weight of all of the other evidence in the record is clear.

The Court concludes that the ALJ provided valid reasons that were supported by substantial evidence for discounting Dr. Guanzon's opinion. Though the ALJ did not specifically lay out the 20 C.F.R. § 404.1527 six factor analysis in his decision, he did explain that (1) Dr. Guanzon's opinion was sharply inconsistent with the other evidence in Plaintiff's record, see 20 C.F.R. § 404.1527(d)(4), and (2) Dr. Guanzon did not provide an adequate evidentiary basis to support his opinion, see 20 C.F.R. § 404.1527(d)(3). The ALJ focused on these two factors to appropriately decide that Dr. Guanzon's opinion was not entitled to controlling weight. The Court finds that even if the ALJ erred by failing to expressly consider the other factors, and by failing to explicitly state the weight actually given to Dr. Guanzon's assessment, such errors were harmless and do not warrant remand. The reasons provided by the ALJ were sufficient to support his determination that Dr. Guanzon's opinion was entitled to no weight. See Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). Accordingly, the Court finds that the ALJ's decision to give Dr. Guanzon's opinion no weight in the RFC determination process was reasonable and supported by substantial evidence.

**B.     Evidence of Plaintiff's mental condition that became part of Plaintiff's medical record after the ALJ rendered his decision**

Plaintiff contends that this case should be remanded to the Commissioner "in accordance with the sixth sentence of 42 U.S.C. § 405(g) [for consideration of] new evidence which arose since the ALJ denied [her] claim." [Doc. 10 at 10]. Plaintiff argues that new evidence reflecting "diagnoses of severe depression and anxiety" was submitted to the Appeals Council and thus became

part of her medical record "less than one month after the ALJ issued a denial in this case." [Doc. 10 at 12]. Plaintiff argues that "had the ALJ ha[d] access to the new evidence, there is a good chance he would have reached a different conclusion" with respect to his findings that Plaintiff "had no severe mental impairments and no mental limitations whatsoever." [Doc. 10 at 12] (citing [Tr. 20]). Plaintiff concludes that the fact that new, material evidence came to light after the ALJ's decision was rendered warrants remanding this case so that her mental limitations can be properly determined.

In response, the Commissioner argues simply that "Plaintiff has failed to carry her burden of proving [a] reasonable probability that [the new] evidence [to which she cites] would have changed the ALJ's disability analysis." [Doc. 14 at 21]. The Commissioner contends that the new evidence to which Plaintiff cites does not amount to "substantial evidence" needed to support a finding that Plaintiff has a mental impairment or any work-related mental limitations. The Commissioner asserts that the "diagnoses of severe depression and anxiety," [Doc. 10 at 12], to which Plaintiff cites were based on Plaintiff's incredible representations to the diagnosing mental health examiner. [Doc. 14 at 22]. Further, the Commissioner asserts that the diagnoses only related to Plaintiff's current mental condition at the time they were made, and *not* to Plaintiff's past mental condition during any part of the period from March 29, 2006, through the date of the ALJ's decision. [Doc. 14 at 22]. The Commissioner argues that "the medical evidence Plaintiff submitted to the Appeals Council" does "not satisfy the conditions for sentence six remand." [Doc. 14 at 22-23].

When reviewing the denial of a claim for SSI benefits, "[t]he court may...at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see 42 U.S.C. §

1383(c)(3) (providing that the Commissioner's determination of a claim for SSI benefits "shall be subject to judicial review as provided in section 405(g) of this title"). New evidence can be "material" only if it concerns the SSI claimant's condition during the period of time between the alleged disability onset date and the date of the ALJ's decision. See Oliver v. Sec'y of Health and Human Servs., 804 F.2d 964, 966 (6th Cir. 1986) (stating that new evidence was not material because it was compiled 15 months after the date of the decision denying the claimant benefits and it did not reveal information about the claimant's ability to work as of the date of the decision). The burden of establishing that proffered new evidence is material is on the party seeking remand. Id. (citing Willis v. Sec'y of Health and Human Servs., 727 F.2d 551 (6th Cir. 1984)). "In order for [a party] to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that [the Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health and Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).

In this case, Plaintiff argues that the record, [Tr. 424-32], of her mental health treatment at Cherokee Health Systems from August 27, 2008, through October 16, 2008, is new, material evidence. [Doc. 10 at 11]. Specifically, Plaintiff argues that the diagnoses of "major depression" and "anxiety disorder" recorded on August 27, 2008, [Tr. 429], amount to evidence that probably would have changed the ALJ's determination that she had no severe mental impairments and no mental limitations whatsoever. [Doc. 10 at 11-12].

The Commissioner responds that the record of Plaintiff's treatment at Cherokee is not material for two reasons. First, the Commissioner argues that nothing in the treatment record concerns Plaintiff's condition during the period of time between the alleged disability onset date and

15

the date of the ALJ's decision. The Commissioner states that the therapist who diagnosed Plaintiff with depression and anxiety on August 27, 2008, did not purport to relate the diagnoses to any period of time in the past. [Doc. 14 at 22]. The Commissioner therefore argues that the treatment records from Cherokee only provide evidence of Plaintiff's present mental condition at the time of treatment and *not* her mental condition during the relevant period from March 29, 2006, the alleged disability onset date, through August 8, 2008, the date of the ALJ's decision. The Commissioner concludes that the treatment records proffered by Plaintiff cannot be material. See Oliver, 804 F.2d at 966.

Second, the Commissioner argues that even if the treatment records are considered to be evidence of Plaintiff's mental condition during the relevant period, they simply do not indicate that Plaintiff had mental impairments that limited her to the degree that she was unable to perform her past relevant work. The Commissioner explains as follows:

> [T]he mental health records raise the same credibility concerns that Dr. Page raised. The mental health assessment was based on Plaintiff's representations that she had 'a sever back injury' from childhood, that her doctor told her that she may become paralyzed, and that she has been depressed and nervous due to the 'possibility of eventual paralysis' and 'what will happen to her sons if she becomes paralyzed.' Plaintiff's representations during her mental health examination are unsubstantiated by the record and call into question the reliability of the assessment.

[Doc. 14 at 22].

In short, the Commissioner argues that the ALJ would have had good reasons to discount or reject the opinions of the mental health care providers at Cherokee. The Commissioner therefore concludes that Plaintiff has not demonstrated that there was a reasonable probability that the ALJ would have reached a different disposition of her disability claim if presented with the Cherokee records. See Sizemore, 865 F.2d at 711 (6th Cir. 1988).

The Court agrees with and accepts in whole both of the Commissioner's arguments. Thus, the Court finds that Plaintiff has failed to carry her burden of establishing that the proffered treatment records, [Tr. 424-31], are material. Accordingly, the Court finds that remanding this case pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion For Summary Judgment **[Doc. 9]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 13]** is **GRANTED**. The Commissioner's final decision denying Plaintiff's claim for benefits is hereby **AFFIRMED**, and this case is **DISMISSED**.

**IT IS SO ORDERED.**

ENTER:

_s/ C. Clifford Shirley, Jr._
United States Magistrate Judge